UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SAMUEL EDWARD MICHAEL,<br><br>Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No. 2:19-cv-00494-DCN<br>2:19-cr-00015-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I.     INTRODUCTION

Pending before the Court in the above entitled matters is Petitioner Samuel Edward Michael's Motion to Vacate, Set Aside, or Correct Sentence under § 2255.[1] CR-15, Dkt. 32; CV-494, Dkt. 1. The parties have filed their responsive briefing on the Motion and/or the time for doing so has passed. The matter is, therefore, ripe for the Court's review.

## II.     BACKGROUND

On June 22, 1999, a federal grand jury indicted Michael for abusive sexual contact with a minor under twelve, in violation of 18 U.S.C. §§ 2244(a)(1) and 1153. CR-60, Dkt. 1. The indictment alleged that Michael "did knowingly engage in or cause sexual contact with [victim], an Indian, who had not yet attained the age of twelve . . . ." *Id.* Three months later, Michael entered a plea agreement. *Id.*, Dkt. 33. Within his 1999 plea agreement,

---

[1] In this Order, "CR-60" is used when citing to the criminal case record in 3:99-cr-00060-EJL, "CR-15" is used when citing to the criminal case record in 2:19-cr-00015-DCN, and "CV-494" is used when citing to the civil case record in 2:19-cv-00494-DCN.

Michael pled guilty to the indicted charge and acknowledged that he had the right to a trial, but knowingly waived that right. *Id*. at 2. Michael also acknowledged that "his guilty plea" could "require him to register as a sex offender" and that he had a duty to "comply with that law." *Id*. at 3. Michael signed the plea agreement and affirmed that he had "carefully reviewed every part of the agreement with my attorney" and that "no one has threatened me or forced me in any way to enter into this Plea Agreement." *Id*. at 7. Michael acknowledged that he was "satisfied with the representation of my attorney in this case." *Id*. In December 1999, the Honorable Judge Edward J. Lodge sentenced Michael to 24 months incarceration and three-years supervised release. *Id*., Dkts. 39, 40. Michael did not appeal.

On January 15, 2019, a federal grand jury indicted Michael for failing to register as a sex offender. CR-15, Dkt. 1. Michael, who was represented by counsel, pled guilty to the charge without a plea agreement. *Id*., Dkt. 23. During the change of plea hearing, Michael acknowledged that he would not receive parole and that he should expect to "serve the entire sentence ordered by the Court." *Id*., Dkt. 34, at 7. During this hearing, Michael stated that he had "adequate time to discuss [his] case with [his] attorney" and was "satisfied with [his] attorney's representation." *Id*. at 4. On October 10, 2019, this Court sentenced Michael to 23 months incarceration, to be followed by five-years supervised release, just below the low end of the sentencing guideline range applicable in his case. *Id*., Dkts. 26, 31.

On December 12, 2019, Michael filed his pending § 2255 petition. *Id*., Dkt. 32; CV-494, Dkt. 1. Michael provides two grounds to vacate his sentence. First, Michael argues

that his counsel was ineffective for not objecting to Bureau of Prisons' ("BOP") method for calculating his good time credit. CV-494, Dkt. 1, at 4–6. Second, Michael argues that in his 1999 case, his counsel failed to object to the vague definition of "Indian" or "Indian Country," the victim's "age" and "lack of force or threat," and also suggests that his counsel did not advise him that he would have to register as a sex offender. *Id*. at 7–8. The Government responded to Michael's petition. *Id*. at Dkt. 5. Michael did not file a reply.

### III.   TIMELINESS OF PETITION

Under the applicable statute of limitations, a § 2255 motion must be brought within one year after a judgment of conviction becomes final unless the motion has been statutorily tolled according to 28 U.S.C. § 2255(f)(2)–(4). A judgment of conviction becomes final when it "has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari denied." *United States v. Schwartz*, 274 F.3d 1220, 1223 (9th Cir. 2001).

Michael timely filed his first § 2255 claim (relating to his 2019 sentence within a year after the judgment of the 2019 conviction became final. However, the time to bring his second § 2255 claim—concerning the effectiveness of counsel in his 1999 case—has long expired. Michael asks that this time be statutorily tolled "due to all of the surrounding circumstances," but does not define in his motion what those circumstances are or why they justify such remedy. CV-459, Dkt. 1, at 14. In his affidavit, Michael suggests the time should be tolled due to his lack of knowledge, until 2019, that by pleading guilty in 1999 he might have to register as a sex offender for life. He asserts that if he knew he would be so obligated in the future, he would not have pled guilty. *Id*. at 18.

MEMORANDUM DECISION AND ORDER-3

Although not properly raised by Michael, the Court concludes that equitable tolling does not save his 1999 claim. A petitioner "establishes eligibility for equitable tolling by showing: (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *United States v. Castro-Verdugo*, 750 F.3d 1065, 1071 (9th Cir. 2014) (internal quotation marks and citations omitted); *see also United States v. Aguirre-Ganceda*, 592 F.3d 1043, 1046 (9th Cir. 2010) ("Even though [petitioner's] section 2255 motion was untimely, we may toll the one-year limitation period if (1) the petitioner has diligently pursued his rights, and (2) extraordinary circumstances exist."). "[T]he threshold necessary to trigger equitable tolling . . . is very high." *Mendoza v. Carey*, 449 F.3d 1065, 1068 (9th Cir. 2006). Equitable tolling of a § 2255 claim is available only when "'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *Calderon v. United States Dist. Court (Beeler)*, 128 F.3d 1283, 1288–89 (9th Cir. 1997); *see also Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) (holding equitable tolling is appropriate only "[w]hen external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim").

No extraordinary circumstances have been presented in the record. Assuming Michael is correct and that he may be compelled to register as a sex offender for life, there are essentially two possibilities: first, that when Michael pled guilty there was a possibility that he might have to register for life. If so, he could have discovered that had he been diligent. Second, the law has changed since he pled guilty, *i.e.*, Michael could not have been compelled to register for life at the time of his guilty plea, but now can be due to subsequent changes in the law. If that is the case, Michael's counsel was not ineffective by

failing to predict the future legislative decisions. Thus, the Court finds Michael's second claim is untimely and appropriately denied.

## IV.   STANDARD OF LAW

### A. 28 U.S.C. § 2255

Section 2255 permits a federal prisoner in custody under sentence to move the court that imposed the sentence to vacate, set aside, or correct the sentence on the grounds that:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]

28 U.S.C. § 2255(a). Relief under § 2255 is afforded "[i]f the court finds that . . . there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b).

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Baylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (emphasis in original) (quoting § 2255). In determining whether a § 2255 motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (quotation marks omitted) (alteration in original). A district court may dismiss a § 2255 motion based on a facial review of the record "only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently

frivolous.'" *Id.* at 1062–63 (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)). Conclusory statements in a § 2255 motion are insufficient to require a hearing. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980).

If a court denies a habeas petition, the court may issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of [the petitioner's] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see* 28 U.S.C. § 2253(c)(2). Although the petitioner need not prove the merits of his case for the court to issue a certificate of appealability, the petitioner must show "something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 338 (quotation marks omitted).

## B. Ineffective Assistance of Counsel

"[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). The federal law governing claims of ineffective assistance of counsel is stated in *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). A challenger must prove both: (1) that counsel's performance was deficient; and (2) that there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688.

Under the first prong of *Strickland*, for counsel's performance to be constitutionally deficient, it must fall below an objective standard of reasonableness. *Id.* A "court must

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687). "[S]trategic choices made after thorough investigation of law and facts" by attorneys "are virtually unchallengeable." *Miles v. Ryan*, 713 F.3d 477, 490 (9th Cir. 2012) (quoting *Strickland*, 466 U.S. at 690–91).

Under the second prong of *Strickland*, prejudice is established when there is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Because a convicted defendant must satisfy both prongs of the *Strickland* test, failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *See Strickland*, 466 U.S. at 697 (explaining that it is unnecessary for a court evaluating the merits of an ineffective assistance claim to analyze the components of the applicable test in any particular order or to evaluate both components if the petitioner fails to carry his burden as to one aspect of the test).

## V.    DISCUSSION

Michael argues that his counsel was ineffective "by failing to object to the inapplicable presumption of deference and ambiguous 'feasible' standard as arbitrary" and unconstitutional. CV-459, Dkt. 1, at 4. Specifically, he argues the First Step Act authorized

the BOP to determine an inmate's eligibility to earn time based on current and prior offenses. The BOP has not yet determined credit, but has developed the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") to determine the likely general and violent recidivism risk level for all BOP inmates. Michael notes that although the BOP's method to "compute sentence" has not yet been issued, the very delegation of such computation is unlawful. *Id.* at 17. Michael argues that allowing the BOP to determine time served is an "illegal[] delegated computation of sentence to BOP." *Id*. at 4. Michael claims that he asked his counsel[2] to object to the procedures conducted by BOP officials under 34 U.S.C. § 20913 (b), (d) of the First Step Act under the following four grounds:

1) 34 U.S.C. § 20913 (b), (d)'s text and structure leaves the court without any meaningful standard against which to judge the Attorney General/BOP's exercise of discretion pursuant to its purported delegated authority;
2) Under Michael's applicable rule of Indian construction the interpretation of that statute must be liberally construed in his favor without application of normal *Chevron*-deference;
3) The PATTERN-tool bias warrants the Court's review of Michael's sentencing factors under 18 U.S.C. § 3553(a);
4) Judicial review is in the public interest where the BOP refuses to produce the BOP PATTERN-tool contracts and data, thus would not produce disruptive practical consequences.

*Id*. at 6. Michael asserts that, "absent counsel's failure to object, Michael would not have pled guilty and he would have elected to proceed to trial on all counts[.]" CV-494, at 5. The Court interprets this to mean that had Michael known his counsel would fail to object,

---

[2] It is unclear when Michael is asserting he asked his counsel to object. Based on the petition, the Court believes Michael is alleging he asked his counsel to object after Michael pled guilty but prior to his sentencing.

he would not have pled guilty and would have proceeded to trial.

In its response, the Government contends it is unreasonable for Michael to argue that his decision to plead guilty would have been affected by the methodological changes that BOP uses for good-time credit calculations or that his counsel should have anticipated the issue and was ineffective for not doing so.

The Court acknowledges there is a legitimate concern with the use of opaque algorithms in criminal justice matters. *United States v. Curry*, 965 F.3d 313, 345 (4th Cir. 2020), *as amended* (July 15, 2020), *as amended* (July 16, 2020) (Thacker, J., and Keenan, J. concurring) (stating that algorithms predicting future crime spots may reinforce historical structural racism as "[t]echnology cannot override human flaws. It stands to reason that any computer program or algorithm is only as good as the data that goes into it. In the computer science arena, this is known as "GIGO" (garbage in, garbage out); flawed data input produces nonsense output"); *see also* Katherine Kwong, *The Algorithm Says You Did It: The Use of Black Box Algorithms to Analyze Complex DNA Evidence*, 31 Harv. J.L. & Tech. 275, 291–92 (2017) ("Unreliability and accusations of bias have plagued similarly opaque proprietary algorithms purported to assess defendants' risk of future crime for use in sentencing, bond, and probation decisions. There is growing concern about the impacts such algorithms may have on individuals within the criminal justice system.") (citations omitted). However, BOP's time computation methodology is not at issue here. Rather, as the Government observes, it is whether Michael's counsel's performance fell below an objective standard of reasonableness and, if so, whether there is a reasonable degree of probability that—but for Michael's counsel's decision not to object to the BOP's

methodology—the result of the proceeding would have been different.

Michael's counsel's performance did not fall below an objective standard of reasonableness in failing to object to the Court's reliance on the BOP to compute good time credits. BOP is delegated the authority under 18 U.S.C. § 3624(b) (both before and after the First Step Act) to award and calculate good time credits. The Ninth Circuit has consistently upheld this delegation. *See Engel v. Fed. Bureau of Prisons*, 214 F. App'x 715, 715–16 (9th Cir. 2006) (upholding the BOP's procedure for calculating good-time credits under 18 U.S.C. § 3624(b)); *Pacheco-Camacho v. Hood,* 272 F.3d 1266, 1270–72 (9th Cir. 2001) (holding that the BOP was entitled to full deference for its interpretation of § 3624(b) under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)). The Supreme Court has also upheld the BOP's calculation of time-served under § 3624 prior to the First Step Act. *See Barber v. Thomas*, 560 U.S. 474, 488 (2010) (affirming the BOP's calculation of good time credit because "the BOP's calculation system applies th[e] statute as its language is most naturally read").

On December 21, 2018, the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, was enacted. The Act implemented a number of prison and sentencing reforms. Of relevance here is subsection 102(b). Paragraph 102(b)(1) amends § 3624(b)—the good time credit provision—to require the BOP to permit up to 54 days of credit per year. § 102(b), 132 Stat. at 5210. It also amends § 3624 by adding subsection (g), requiring that, within 210 days of its enactment, the Attorney General establish a "risk and needs assessment system" to, broadly speaking, review each prisoner's recidivism risk level, award earned time credit as an incentive for participation in recidivism reduction

MEMORANDUM DECISION AND ORDER-10

programming, and "determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with section 3624." § 101(a), 132 Stat. at 5196–97.

While the First Step Act amended § 3624, it did not radically alter the delegation structure of the statute. As a similar structure was previously upheld by the Ninth Circuit and the Supreme Court, it was reasonable for Michael's counsel to not object to the Court delegating, as required under statute, the award and calculation of time served credits. Thus, Michael has not met the first prong of the *Strickland* test for ineffective counsel.

However, even if Michael's counsel *should* have objected, the result of the proceeding would not have been different. During the change of plea hearing, the Court addressed the prison time that Michael would serve when sentenced. The Court informed Michael that "[i]n federal courts, there is no parole. This means that if imprisonment is ordered in your case, then you will serve the entire sentence ordered by the Court. Is that understood?" Dkt. 34, at 7. Michael replied "Yes." *Id*. For Michael to argue now that had he known he might not get credit for time served, he would not have pled guilty, is contrary to the record. Michael knew, prior to entering his plea, that he should expect to serve his entire sentence, without a consideration of good-time credit. Thus, the Court finds the second prong of the *Strickland* test is also unsatisfied.

It is plain from the briefs and the record of prior proceedings that Michael is not entitled to relief under § 2255 motion. If Michael remains concerned about the constitutionality of Congress's delegation to the BOP under § 3624 or the methodology the BOP uses to compute time-served, he may file a non-§ 2255 civil suit.

MEMORANDUM DECISION AND ORDER-11

## VI. Certificate of Appealability

Petitioner cannot appeal from the denial or dismissal of his § 2255 Motion unless he first obtains a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A certificate of appealability will issue only when a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A certificate of appealability is warranted when "jurists of reason could disagree with the district court's resolution of [the petitioner's] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003); 28 U.S.C. § 2253(c). No such showing has been made in this case and, therefore, the certificate of appealability is denied. 28 U.S.C. § 2253(c)(2).

## VII.   ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

1. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (CV 1, Case No. 2:19-cv-15-DCN) (CR 32, Case No. 2:19-cr-494-DCN)is **DENIED**. The Clerk of the Court is directed to file this Order in both the criminal and civil cases.

2. The Certificate of Appealability is **DENIED**.

DATED: September 21, 2020

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER-12